IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, THE STATES OF CALIFORNIA, COLORADO, FLORIDA, LOUISIANA, MONTANA, NEVADA, NEW MEXICO, AND WASHINGTON *ex rel.* ERICKA ZELICKOWSKI,<br><br>*Plaintiffs,*<br><br>v.<br><br>ALBERTSONS LLC,<br><br>*Defendant.* | Civil Action No. SA-15-CV-957-XR |

**ORDER ON MOTION TO DISMISS**

On this date, the Court considered Defendant's Motion to Dismiss (docket no. 47), Relator's Response (docket no. 48), and Defendant's Reply (docket no. 49). After careful consideration, the Court GRANTS Defendant's motion and dismisses Relator's claims without prejudice.

**BACKGROUND**

In this *qui tam* action, Relator Ericka Zelickowski, a former Albertsons pharmacist, alleges that Albertsons illegally overcharged federal and state programs for generic drugs. Relator alleges that, in 2013, Albertsons began offering deeply discounted generic drugs through its MyRxCare program. Relator's core legal theory is that this program established Albertsons' "usual and customary" prices for these generic drugs, and while the health care laws of the governments named here mandate that Albertsons can charge the governments no more than this "usual and

1

customary" price, Albertsons instead submits the non-MyRxCare price for government reimbursement.

On November 2, 2015, Relator brought this action on behalf of the United States under the federal False Claims Act ("FCA") and on behalf of California, Colorado, Florida, Louisiana, Montana, New Mexico, Nevada, and Washington under the laws of these states. After investigation, the United States and the Plaintiff-States declined to intervene in the action on March 22, 2017. Docket no. 19. Relator filed her amended complaint on June 20, 2017, docket no. 23, and Defendant moved to dismiss on August 1, 2018, docket no. 47.

Two other actions are relevant. First, on March 9, 2015, Billy Gill, another Albertsons pharmacy employee, brought a *qui tam* case against Albertsons in the Central District of California, *United States ex rel. Gill v. Albertsons*, 5:15-CV-449-CAS-KK. Defendant attaches the docket sheet and other filings in the *Gill* action as exhibits to its motion to dismiss. The *Gill* action was brought on behalf of the United States and California and alleged that Albertsons illegally submitted for government reimbursement regular cash prices—not the MyRxCare discount prices—for generic drugs. Docket no. 47-1. After investigation, the United States and California declined to intervene and Gill voluntarily dismissed the *Gill* action on May 16, 2017.

Second, on October 29, 2015, Relator brought a Texas False Claims Act suit against Albertsons in Texas state court. Docket no. 47-13. This action alleged Albertsons created its MyRxCare program to wrongfully deprive the federal and state governments of the discounted prices. *Id.* This action, as part of a settlement with the State of Texas, was dismissed with prejudice on March 21, 2017. Docket no. 47-2.

**DISCUSSION**

Defendant raises three primary arguments in support of its motion to dismiss. First, Defendant argues that the FCA's first-to-rule rule bars Relator's complaint, given that another relator in a separate case (*Gill*) beat Relator to the courthouse. Second, Defendant argues that, even if the statutory bar does not apply, the now-settled case filed by Relator against Albertsons in Texas state court bars this case on res judicata grounds. Third, Defendant argues that if these arguments fail, Relator has not sufficiently pled materiality, falsity, or scienter under Rule 9(b).

**I.     The FCA's and California FCA's First-to-File Rules Bar Relator's Claims**

First, the Court turns to the first-to-file rule. Defendant argues that Relator's complaint is jurisdictionally barred by the first-to-file rules in the FCA and California FCA[1] because the Gill lawsuit was filed three days before Relator's lawsuit. The mandatory application of this rule, Defendant argues, strips this Court of jurisdiction over the federal and California FCA claims. With the federal claims gone—the only claims over which this Court has original jurisdiction—Defendant urges this Court, in its discretion, to decline jurisdiction over the other state FCA claims asserted in the amended complaint.

**a.  Legal Standard**

The FCA, which authorizes suits against those suspected of defrauding the government, allows private individuals—*qui tam* relators—to sue on behalf of the federal government. 31 U.S.C. §§ 3729-30. Successful relators receive a monetary award. *Id.* § 3730(d)(1). Congress, realizing that with this monetary stake came the risk of abusive, "parasitic" suits, created several restrictions on *qui tam* actions. *United States ex rel. Shea v. Cellco Partnership*, 863 F.3d 923, 926 (D.C. Cir. 2017) (citing *State Farm Fire and Cas. Co. v. United States ex rel. Rigsby*, 137 S.Ct.

---

[1] It is undisputed that the first-to-file rules in the FCA and California FCA are the same and require the same analysis. Docket no. 48 at 6 n.4.

436, 440 (2016)). One of these restrictions, the first-to-file bar, addresses the problems that would result if many relators could file an action based on the same fraud. *Id.* at 927. The bar "ensures only one relator will share in the government's recovery and encourages prompt filing from relators desiring to be first to the courthouse." *Id.* (citing *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs.*, Inc., 149 F.3d 227, 234 (3d Cir. 1998)). Once an action is begun, later claims pointing to the same wrongdoing "do not help reduce fraud or return funds to the federal fisc, since once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related funds." *LaCorte*, 149 F.3d. at 243.

The first-to-file bar provides that "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). In the Fifth Circuit, this first-to-file rule is jurisdictional. *United States ex rel. Edgett v. Kimberly-Clark Corp.*, No. 3:15-CV-0434-B, 2017 WL 4222697, at *3 (N.D. Tex. Sept. 22, 2017) (citing *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 378 (5th Cir. 2009)). Accordingly, whether a previously filed case bars Relator's complaint is a question properly analyzed under Federal Rule of Civil Procedure 12(b)(1). In evaluating subject matter jurisdiction on a motion to dismiss, a court may consider "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen Liab. Corp.*, 757 F.3d 481, 483 (5th Cir. 2014)

Because subject matter jurisdiction is determined at the time the complaint was filed, *Carney v. RTC*, 19 F.3d 950, 954 (5th Cir. 1994), "courts look to see whether an earlier-filed, related *qui tam* suit was pending when the relator filed her complaint," *Edgett*, 2017 WL 4222697,

at *3. "Two things must be true for the first-to-file provision to bar a relator's suit." *Id*. First, a court must determine whether an earlier-filed action was "pending." The Supreme Court interpreted this term to mean that "an earlier suit bars a later suit while the earlier suit remains undecided but ceases to bar that suit once it is dismissed." *Kellogg Brown & Root Services, Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970, 1978 (2015). Second, a court must determine whether two actions are related, and thus whether the prior-filed pending action bars the later-filed one. To determine relatedness, a court considers whether "the later-filed complaint alleges the same material or essential elements of fraud described in a pending qui tam action." *Branch Consultants*, 560 F.3d at 378.

### b. The *Gill* Action was Pending When Relator Filed Her Complaint

Here, the *Gill* action (filed on March 9, 2015) was pending when Relator initiated her action (filed on November 2, 2015). Relator argues, however, that the *Gill* action is no longer pending and thus no procedural obstacle remains. Relator notes that *Gill* was voluntarily dismissed on May 16, 2017, after which Relator filed an amended complaint (docket no. 23) on June 20, 2017. The argument, then, is that this amended complaint is now the first-filed action (given that *Gill* is dismissed) and any jurisdictional defect that might have previously existed is now cured.

Relator cites *Carter* as support for this proposition. *Carter*, however, as courts have recognized, decided a different question: whether dismissal of a prior-filed action bars actions *filed* after the earlier action's dismissal.[2] The *Carter* court concluded that future filed suits would not

---

[2] *See, e.g., United States ex rel. Shea v. Cellco Partnership*, 863 F.3d 923, 929 ("The only question in this case is whether the statutory requirement to dismiss the second action falls away in circumstances in which the action has yet to be dismissed by the time the first-filed suit reaches completion. At that point, we know from *Carter*, 135 S.Ct. at 1979, that the first-to-file bar would no longer block initiation of a related action. Consequently, although the first-to-file bar prohibited Shea from bringing *Verizon II* at the time he filed it, the bar no longer poses any obstacle to his refiling the action. Shea, however, would take *Carter* one step further. In his view, once his first-filed suit ended in settlement, the district court should have allowed him to cure the first-to-file violation by amending his existing complaint in *Verizon II* rather than dismissed the action with leave to refile it.").

5

be barred because the first action would no longer be "pending." *Carter*, 135 S. Ct. at 179 (holding that a *qui tam* suit ceases to be "pending" once it is dismissed and that to hold otherwise would "lead to strange results that Congress is unlikely to have wanted" and "bar all subsequent related suits even if that earlier suit was dismissed for a reason having nothing to do with the merits"). It is clear, then, that if Relator had filed her claim after *Gill* was dismissed, the first-to-file bar would not operate against Relator, as *Gill* would not be pending.

The distinct question relevant here is whether a relator whose action was barred at the time of filing (because of an earlier-filed action) can cure that defect by filing an amended complaint after the earlier-filed action is dismissed. The Fifth Circuit has not decided this question, which has split other circuits. The First Circuit, the first to confront the question after *Carter*, held that an amended complaint *can* cure this defect, emphasizing function over form in so holding. *United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 6 (1st Cir. 2015) ("Developments occurring after the filing of the second amended complaint . . . have dissolved the jurisdictional bar that the court below found dispositive. . . . [T]his case is analogous to the cases in which a jurisdictional prerequisite (such as an exhaustion requirement) is satisfied only after suit is commenced. Under the circumstances, it would be a pointless formality to let the dismissal of the second amended complaint stand—and doing so would needlessly expose the relator to the vagaries of filing a new action.").

The Second and D.C. Circuits have since taken the opposite approach. The D.C. Circuit, in *Shea*, rejected the argument that dismissing the action, rather than allowing an amended complaint, would "elevate form over substance." *Shea*, 863 F.3d at 930. While the *Shea* court recognized that the First Circuit in *Gadbois* had accepted this argument, calling dismissal a "pointless formality," *Shea* noted that to accept this reasoning would result in a rule that conflicts

6

with the statute and "would give rise to anomalous outcomes." *Id.* For example, "if a relator brings suit while a related action is pending, her ability to proceed with her action upon the first-filed suit's completion could depend on the pure happenstance of whether the district court reached her case while the first-filed suit remained pending." The court elaborated with a hypothetical:

> [I]magine a situation in which relators A, B, and C each file a qui tam action alleging the same fraud. Relator A reaches the courthouse first and his action therefore goes forward. Relator B reaches the courthouse second, but the district court determines his suit is blocked by the first-to-file bar and thus dismisses it per the ordinary course. Relator C files last, and shortly thereafter, the first-filed action is dismissed. But suppose relator C filed her suit so late in the game that the district court fails to dismiss her action before dismissing the first-filed suit. Under Shea's proposed rule, relator C would receive a windfall: she, unlike relator B, could simply amend her existing complaint and thereby secure herself pole position in the first-to-file queue. Relator C would jump past relator B for the opportunity to proceed with her suit (and to share in the government's reward).

*Id.* (citations omitted). The court surmised that "Congress presumably would not have intended a relator's fate to depend on chance considerations such as the extent of a particular court's backlog and the timeliness of a particular court's entry of a dismissal." *Id.; see also Wood*, 899 F.3d at 174 (noting that if "the primary, if not sole purpose of the first-to-file rule is to help the Government uncover and fight fraud, it is unlikely that Congress intended to do so in an inefficient manner prone to anomalous outcomes" (quotations omitted)). Thus, the *Shea* court determined that "adhering to the normal remedy of a dismissal for a first-to-file violation would do more than advance a mere formality. It would level the playing field among relators consistent with the ordinary operation of the first-to-file bar as conceived by Congress." *Id.*

Most recently, the Second Circuit, in *Wood*, reached the same conclusion. In interpreting the statute, the *Wood* court stated that "the statute bars a person from *bringing*—not continuing to prosecute—a related action during the pendency of an FCA case" and the "first-to-file bar is thus clear: an action cannot be *brought* while a first-filed action is pending." 899 F.3d at 172.

"Therefore, amending or supplementing a complaint does not *bring* a new action, it only *brings* a new complaint into an action that is already pending. *Id.* And while "deficiencies in a complaint can often be cured by amendment," an "amended or supplemental pleading cannot change the fact that [relator] *brought* an action while another related action was pending, as is prohibited by the first-to-file bar." *Id*. at 173 (citing *Shea*, 863 F.3d 923). The *Wood* court noted that to hold otherwise would pose serious administrative concerns and disrupt the orderly operation of the FCA, create problematic inefficiencies[3], and render any statute of limitations obsolete.[4] *Id.* at 173-74.

Recognizing that some relators' claims will be barred by the statute of limitations if dismissed and forced to re-file, *Wood* stated that this risk "is always present when there is a statute of limitations, and it is weighed against the countervailing concerns of Congress." *Id.* at 174. *Wood* deflected the idea that these limitations concerns would chill relators' claims, since many claims remain under seal and "relators are aware that their claims may very well be barred by the time they get to the courthouse" and this holding "does not significantly alter the incentive structure to which would-be relators have become accustomed." *Id.* While the FCA's scheme is "difficult for relators," this "is how Congress designed the statutory scheme, and it is carefully calibrated to strike 'the golden mean between adequate incentives for whistle-blowing insiders . . . and discouragement of opportunistic plaintiffs.'" *Id.* (quoting *United States ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994)).

To date, the only district court in the Fifth Circuit to decide the question has held that an amended complaint could not cure the defect. *U.S. ex rel. Branch Consultants, L.L.C. v. Allstate*

---

[3] "For example, a district court may hold related cases indefinitely awaiting the potential dismissal of the first-filed action." *Id.*
[4] This is because "[r]elators could simply file unlimited related actions and keep each one 'on ice' until the case before it is dismissed, allowing the next case to take its turn." *Id.*

*Ins. Co.*, 782 F. Supp. 2d 248, 261–62 (E.D. La. 2011). In that case, the Eastern District of Louisiana concluded that the FCA's jurisdictional bars must be satisfied at the time of filing. The court noted that the first-to-file bar encourages relators to quickly report fraud and it "would be anomalous if a relator could secure a place in the jurisdictional queue with merely skeletal allegations, only to then file an amended complaint after actually becoming an original source, and thereby trump any meritorious, related actions that were filed in the meantime." *Id.* at 264.

Here, as support for the position that an amended complaint can cure this jurisdictional problem, Relator cites the Supreme Court's decision in *Rockwell International Corp. v. United States*, 549 U.S. 457 (2007). Docket no. 48 at 12. The *Rockwell* court held that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." 549 U.S. at 473-74. In *Allstate*, the Eastern District of Louisiana persuasively distinguished the *Rockwell* holding: "*Rockwell*, and the cases it cites, make clear that a plaintiff can amend himself or herself out of jurisdiction by withdrawing allegations that appeared in the original complaint . . . . But *Rockwell* does not suggest that a plaintiff can establish jurisdiction by amendment when jurisdiction did not previously exist." 782 F. Supp. 2d at 261-62; *see also United States ex rel. Carter v. Halliburton Co.*, 144 F. Supp. 3d 869, 882 (E.D. Va. 2015) (citing *Allstate* as one of two opinions that "convincingly concluded that *Rockwell* does not make an amended complaint the relevant point of focus for the first-to-file bar" and holding that "an amended complaint does not save a *qui tam* suit that was barred when the relator filed the initial complaint").

This Court finds the reasoning in *Shea* and *Wood* persuasive and holds that Relator's action—doomed at the time of filing because of the prior-filed *Gill* action—cannot be cured by Relator's amended complaint.

### c. This Action and the *Gill* Action Are Related

Since the Court finds that *Gill* was pending when Relator filed her complaint, the next question is whether *Gill* and this action are related. The test is whether "the later-filed complaint alleges the same material or essential elements of fraud described in a pending *qui tam* action." *Branch Consultants*, 560 F.3d at 378. A relator cannot avoid the bar by "simply adding factual details or geographic locations to the essential or material elements of a fraud claim against the same defendant described in a prior complaint." *Id.* "Focus[ing] on the details of the later-filed action would allow an infinite number of copycat *qui tam* actions to proceed so long as the relator in each case alleged one additional instance of the previously exposed fraud," as this conflicts with the bar's "goal of preventing parasitic" actions. *Id.*

Defendant argues that the two actions are related because they

> assert the ***same sole claim***: that Albertsons submitted claims for generic drugs to government payors at higher prices than charged to MyRxCare program members. *Compare* [Relator's amended complaint, docket no. 23 at 4-5] (alleging that Albertsons "knowingly charged the Plaintiff-States substantially more for theses generic drugs in the government funded programs, thereby wrongfully overcharging these Plaintiff-States in violations of the false claims act") *with Gill* Complaint, [docket no. 47-1 at 3] (alleging that Albertsons "knowingly charged the governments substantially more for these generic prescription drugs in the government programs, thereby wrongfully overcharging the plaintiff governments in violation of the False Claims Act").

Docket no. 47 at 17 (emphasis in original). In addition to alleging the same claim, Defendant argues that the two actions "allege[] the ***same underlying facts***: that the fraud was carried out through Albertson's MyRxCare program . . . . Other essential and material similarities include the plaintiff-governments, government payor programs, national scope of the allegations, allegations of the fraud, and the facts supporting the alleged fraud." *Id.*[5]

---

[5] Defendant lists further factual and other similarities in an appendix to its motion. Docket no. 47 at 44.

Defendant argues that Relator's complaint does not contain a single new allegation against Albertsons not found in the *Gill* complaint, and "although Relator includes additional Plaintiff-States and government payors, that itself does not overcome the first-to-file bar." *Id.* at 9. Cases like *Branch Consultants* and *Edgett* show that additional parties or factual detail do not impact the application of the bar. Notably, Relator does not dispute this issue. The actions allege similar claims on similar facts, and since the law is clear that "related" does not mean "identical," the Court finds that Relator's action and *Gill* allege the same material or essential elements of fraud and are thus related. Since *Gill*, a related action, was pending at the time Relator began her action—a defect that cannot be cured by Relator's amended complaint—the first-to-file rule bars this action.

Relator argues that, even if the first-to-file bar applies, the Court can, in its discretion, choose not to apply the bar and that it should do so in this case. Relator argues the Court must "determine whether there are compelling circumstances that caution against the application of the first to file rule," docket no. 46 at 7, citing as support *American Security Ins. Co. v. Berry,* 2002 WL 449065, at *1 (N.D. Miss. Jan. 31, 2002), and *Salazar v. Bloomin' Brands, Inc.*, 2016 WL 1028371, at *2 (S.D. Tex. Mar. 15, 2016). As Defendant correctly points out, however, these cases do not apply the FCA's first-to-file bar, and in the Fifth Circuit this bar is a jurisdictional rule, which is not discretionary. Further, the Supreme Court recently cited the bar specifically as an example of the "number of provisions [in the FCA] that do require, in express terms, the dismissal of a relator's action." *Rigsby*, 137 S. Ct. at 442-43 (2016).

Thus, the Court is aware of no authority recognizing a court's discretion in applying the bar, and even if it did have such discretion it is not clear that the circumstances of this case would militate in favor of allowing Relator to bypass the first-to-file rule. The Court is sympathetic to

Relator's arguments that "there are no wasted judicial resources and no fear of inconsistent results" and "this case will be the first to reach the merits of these issues if it is allowed to proceed, which achieves the purpose of the FCA and the first-to-file rule: to quickly and efficiently investigate and litigate fraud committed on the government while protecting defendants from double recovery." Docket no. 48 at 8. These arguments are counteracted, however, by the need not to upset the policy balance—described by the *Shea* and *Wood* courts—that Congress implemented in the FCA.

Relator also claims not to have known about the *Gill* action, as both claims were under seal long after they were filed. Docket no. 48 at 11 ("*Gill* and this action were filed in quick succession, but because they were filed under seal . . . neither knew of the other's existence."). Relators assume this risk in filing a *qui tam* action, however, and knowledge (or lack thereof) of an earlier-filed action does not impact this analysis. *See Wood*, 899 F.3d at 174 ("The FCA's scheme is difficult for relators, who may substantially invest in claims, only to find out that a recently unsealed complaint blocks their action, months if not years down the road.").

Accordingly, the first-to-file rules in the FCA and California FCA bar Relator's FCA and California FCA claims. These claims are dismissed under Rule 12(b)(1). Relator's claims against the other states remain. A district court, however, does not have to exercise supplemental jurisdiction over state-law claims if it dismisses all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Here, this Court only has original jurisdiction over the FCA claim, which is barred. Thus, the Court declines to exercise jurisdiction over Relator's state-law claims.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (docket no. 47) is GRANTED. Relator's claims are DISMISSED WITHOUT PREJUDICE. The Clerk is directed to close this case.

It is so ORDERED.

SIGNED this 17th day of December, 2018.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE